Howard J. Weg (State Bar No. 91057)
*hweg@pwkllp.com*
Monsi Morales  (State Bar No. 235520)
*mmorales@pwkllp.com*
Julian I. Gurule  (State Bar No. 252160)
*jgurule@pwkllp.com*
PEITZMAN, WEG & KEMPINSKY LLP
10100 Santa Monica Boulevard, Suite 1450
Los Angeles, CA  90067
Telephone: (310) 552-3100
Facsimile:  (310) 552-3101

Counsel for T Asset Acquisition Company, LLC,
Halcyon Holding Group, LLC, dba The Halcyon Company,
and Dominion Group LLC, and
Proposed Counsel for Halcyon Music Publishing, LLC,
Halcyon Games, LLC, T Salvation Distribution, LLC,
T Salvation Distribution (BVI), Ltd., T Asset
International (BVI) Ltd., Halcyon International (BVI) Ltd.,
Halcyon Consumer Products, LLC and T Salvation
Productions, LLC,
Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>T ASSET ACQUISITION COMPANY, LLC, *et al.,*<br><br>                    Debtor. | Case No.: 2:09-bk-31853-ER<br><br>Chapter 11<br><br>(Jointly Administered with Case Nos.: 2:09-31854-ER, 2:09-31855-ER, 2:10-10851-ER, 2:10-10852-ER, 2:10-10853-ER, 2:10-10854-ER, 2:10-10855-ER, 2:10-10856-ER, 2:10-10857-ER, 2:10-10858-ER)<br><br>**MOTION FOR ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN DEBTORS AND PACIFICOR; DECLARATION OF DEREK ANDERSON** |
| **Check One or More as Appropriate:**<br>Affects All Debtors:                                          ☒<br>Affects T Asset Acquisition Company, LLC only: ☐<br>Affects Halcyon Holding Group, LLC only:     ☐<br>Affects Dominion Group LLC only:               ☐<br>Affects one or more Affiliated Debtors only:   ☐<br>     Affiliated Debtor(s):_____ | Hearing:<br><br>Date:    February 10, 2010<br>Time:   10:00 a.m.<br>Place:   Courtroom 1568<br>            255 East Temple Street<br>            Los Angeles, CA |

The debtors and debtors in possession in the above-captioned jointly-administered chapter 11 cases (the "Debtors") hereby move the Court for an order approving the Settlement, Bidding & Release Agreement (the "Settlement Agreement") by and between, among others, the Debtors and Pacificor, LLC (referred to herein, together with Deep Value Hedged Income-1; Coca-Cola Inc.; Pacificor Offshore Fund Ltd.; Pacificor Fund LP; and Pacificor Fund II LP, as "Pacificor"), pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "Motion"). The Settlement Agreement should be approved because it would increase competition at the auction for the Debtors' assets on February 8, 2010, as proved correct, dissolve any deficiency claim of Pacificor following the auction, and eliminate the burden on the Debtors' estates (the "Estates") and the Court arising from expending further time and expense in litigating the disputes with Pacificor, all of which will benefit the estates and the Debtors' creditors.

## I.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter relates to the administration of the Debtors' estates and is accordingly a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue of this case is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure ("FRBP").

## II.

## FACTUAL BACKGROUND

A.   **The Debtors and the Pacificor Dispute.**

The Debtors comprise a privately-financed media development, production and financing corporate group. In May 2007, the Debtors acquired all of the future rights in relation to the *Terminator* movie franchise (the "Franchise"). In order to purchase the *Terminator* rights, on April 16, 2007, TAC and Halcyon obtained a $30 million loan (the "Initial Loan") from Pacificor. As collateral for the repayment of the Initial Loan, T Asset Acquisition Company ("TAC") and Halcyon Holding Group, LLC ("Halcyon") granted Pacificor a security interest in substantially all of their assets. To obtain further needed funding, Halcyon and TAC, separately, borrowed additional funding from Pacificor pursuant to additional loan agreements dated December 2007 and February 2009,

respectively (together with the Initial Loan, the "Pacificor Loans").  As security for the new loans,
further assets were pledged to Pacificor, including Dominion Group LLC's ("Dominion") interest in
Halcyon.

 In or about late July 2009, Pacificor notified Halcyon and TAC that they were in default under
the terms of their loans.  Pacificor demanded that the Debtors immediately repay certain of the loans
and began enforcement of its purported rights and remedies against the Debtors to take control of the
Franchise.

 In light of Pacificor's actions, on August 17, 2009, after considering all reasonable
alternatives, TAC, Halcyon and Dominion (the "Original Debtors") determined that it would be in
their best interests and the best interests of their creditors to commence these chapter 11 cases.

 Subsequently, various disputes arose between the Original Debtors and Pacificor during the
course of the bankruptcy cases.  For example, on or about November 25, 2009, the Original Debtors
filed an adversary proceeding (the "Adversary Action") in the Bankruptcy Court against Pacificor and
others asserting, among other claims, that Pacificor's security interests were avoidable, that
Pacificor's claims should be equitably subordinated, and that the Debtors' obligations under certain of
the Pacificor Loans had been extinguished pursuant to a full release granted by Pacificor under the
terms of that certain Settlement Agreement, dated February 16, 2009 (the "February 2009
Agreement").  On February 4, 2010, the Bankruptcy Court entered an Order compelling arbitration of
the Debtors' contention that Pacificor had released its claims.

 Further, with respect to Pacificor's asserted claims against the Estates, disputes existed
concerning the liability of the various Debtors' and affiliated entities and the scope of the liens
claimed by Pacificor.  Pacificor has argued that its liens granted under the various loan agreements are
secured by all assets of Halcyon, TAC and the Debtors' insiders and affiliates.  Pacificor also
suggested, on several occasions, that grounds exist supporting the substantive consolidation of the
Debtors and their affiliates or a finding that they are alter egos of each other.  The Debtors, on the
other hand, maintain that substantive consolidation is not warranted here and that certain obligations
that may be owing to Pacificor under one or more loan agreements may or may not be owed by TAC
and may or may not be secured by all of its assets.  In addition, all of the Debtors may or may not
have had sufficient rights in all of the assets to grant security interests therein.  These disputes, in

addition to those raised by the Adversary Action, have been resolved in full under the terms of the Settlement Agreement.

In addition, Pacificor has also opposed a range of the Debtors' motions related to the administration of the bankruptcy cases. The expense, distraction, and delay caused by these disputes has slowed the Debtors' efforts to sell the Franchise and have resulted in decreased amounts available for eventual recovery by creditors. For example, the Debtors' principals and professionals have been required to submit to depositions on numerous occasions, resulting in the diversion of attention away from the sale process and substantial expense to the Estates.

**B.** **The Sale Process.**

On or about December 18, 2009, the Original Debtors filed a motion (the "Sale Procedures Motion") seeking to establish a process to sell certain rights relating to the Terminator film franchise, and filed their *Motion of Debtors For Order Authorizing and Approving Sale of Debtors' Assets Relating To The Terminator Motion Picture Franchise Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Sections 363 and 365 of the Bankruptcy Code* (the "Sale Motion").

On or about January 28, 2010, the Bankruptcy Court entered an its order granting the Sale Procedures Motion, which, among other things, (a) approved a "stalking horse" bid submitted by Lions Gate Films, Inc. (the "Lions Gate Bid") on the terms set forth in an Asset Purchase Agreement dated as of January 7, 2010 (the "Lions Gate APA"); (b) set a deadline of February 4, 2010 at 5:00 p.m. for the submission of overbids; and (c) scheduled an auction between "Qualified Bidders" for 10:00 a.m. on February 8, 2010 (the "Auction"). At a hearing held on January 27, 2010, the Court denied a motion by Pacificor for a determination that no bona fide dispute existed with respect to claims against the estates. The Order thereon was entered on February 8, 2010.

Absent a resolution of the various disputes among the parties, Pacificor would not have an allowed undisputed claim and therefore would not be able to participate in the Auction by the use of a "credit bid."

**C.** **The Debtors and Pacificor Reach an Agreement.**

On February 8, 2010, the Debtors and Pacificor entered into the Settlement Agreement that resolves all disputes between and among the Debtors and Pacificor. A true and correct copy of the

Settlement Agreement is attached as Exhibit 1 to the Declaration of Derek Anderson.  The principal terms of the Settlement Agreement are as follows:

(i)    <u>Pacificor Receives Allowed Claim.</u>  Pacificor shall have an allowed claim against the Estates of $38,179,000 (the "Allowed Claim"), recoverable against the Estates solely as provided in the Settlement Agreement.

(ii)    <u>Pacificor May Bid At Auction.</u>  Pacificor has submitted an overbid for the "Granted Terminator Assets" (as defined in the Lions Gate APA) consisting of a credit bid component of $25 million and a "Rights Participation Amount" in the amount of $5 million cash for each sequel made following the closing of the sale.  Pursuant to the Settlement Agreement, Pacificor's bid was deemed by the Debtors to be a "Qualifying Bid" (as defined in the Court's order regarding sale procedures).

(iii)    <u>Pacificor May Participate At Auction, Subject To Conditions.</u>  Pacificor has the right, but not the obligation, to participate further in the Auction, subject to the following:

a.    incremental credit bids by Pacificor shall be in an amount no less that $1 million (the Sale Procedures Motion required overbids to be made in increments of at least $500,000), unless and until the credit bid component of Pacificor's bid or the cash component of a bid by another bidder equals $30 million.  Thereafter, Pacificor's incremental credit bids shall be in an amount no less than $500,000.

b.    any additional bids by Pacificor shall include the payment of (1) $5 million cash per sequel, or (2) a contingent consideration component on terms that are the financial equivalent of the "Contingent Consideration" component of Lions Gate's Bid, as set forth in Schedule 1.7(a) of the Lions Gate APA, or (3) a contingent consideration component that is financially superior to either (1) or (2).

(iv)    <u>If Pacificor Wins At Auction.</u>  Should Pacificor submit the winning overbid at the Auction, as determined by the Debtors, upon the close of the sale transaction, in full and complete satisfaction of the Allowed Claim, Pacificor shall:

a.    pay in cash administrative expenses of the Estates in the aggregate amount of $2,179,000, less $550,000 (reflecting Pacificor's cash deposit for the Auction),

which shall also be transferred to pay the Estates administrative expenses; and

b.        acquire the Granted Terminator Assets.

(v)        <u>If Pacificor Does Not Win At Auction.</u>  Should Pacificor not submit the winning overbid at the Auction, upon the close of a sale transaction, in full and complete satisfaction of the Allowed Claim, Pacificor shall:

a.        receive all of the immediate cash component paid by the winning overbidder at the closing of the sale, up to the amount of the Allowed Claim; and

b.        pay in cash administrative expenses of the Estates in the aggregate amount of $2,179,000, less $550,000 (reflecting Pacificor's cash deposit for the auction), which shall also be transferred to pay the Estates administrative expenses.

(vi)        <u>Pacificor Waives Deficiency Claim.</u>  Upon (1) the closing of a sale transaction, and (2) Pacificor's receipt of either (a) the Granted Terminator Assets by credit bid, or (b) the cash component of the winning overbid for the Granted Terminator Assets from an overbidder, Pacificor waives any further right to receive any distribution on account of the Allowed Claim, including the right to assert a deficiency claim against the Estates, <u>provided</u> <u>that</u>, if Pacificor is not the winning bidder and the cash component of the winning bid is less than the amount of the credit bid component of Pacificor's final bid, then Pacificor shall have an allowed deficiency claim against the Estates' rights and interests in the contingent compensation component of the winning bid.  Such deficiency claim will (1) be equal to the difference between the cash component of the winning bid and the credit bid component of Pacificor's last bid, not to exceed $10 million, (2) bear interest at 8% per annum, and (3) be payable solely from the contingent compensation components of the winning bid.

(vii)        <u>The Original Debtors Dismiss Adversary Action.</u>  The Original Debtors will dismiss the Adversary Action against Pacificor with prejudice.[1]

(viii)        <u>Mutual Releases and Discharges.</u>  Pacificor and the Debtors exchange broad releases and discharges of claims and actions against each other.

//

//

---

[1] The Debtors may maintain the Adversary Action as against Defendant Kurt Benjamin.

# III.

## ARGUMENT

**A.    The Court Should Approve The Agreement Pursuant To FRBP 9019 Because It Is In The Best Interest Of The Estates**

Bankruptcy courts may, after the filing of a motion and with notice and the opportunity to request a hearing provided to the estate creditors, approve a compromise or settlement.  FRBP 9019(a).  The Ninth Circuit has long recognized that "[t]he bankruptcy court has great latitude in approving compromise agreements." *Woodson v. Fireman's Fund Ins. Co. (In re Woodson*), 839 F.2d 610, 620 (9th Cir. 1988).  The purpose underlying a settlement agreement is to avoid the expenses and burdens that are associated with litigating deeply contested and questionable claims. *Martin v. Kane (In re A & C Properties*), 784 F.2d 1377, 1380-81 (9th Cir. 1986).  Accordingly, in approving a settlement agreement, the court need not conduct an exhaustive investigation of the claims sought to be compromised. *See United States v. Alaska Nat'l Bank (In re Walsh Constr., Inc.*), 669 F.2d 1325, 1328 (9th Cir. 1982).  Rather, it is sufficient that the court find that the settlement is "fair and equitable," negotiated in good faith and reasonably believed to be the best compromise negotiable under the circumstances. *See In re A & C Properties*, 784 F.2d at 1381.

In determining whether to approve a compromise pursuant to FRBP 9019, the Ninth Circuit Court of Appeals has identified four factors that indicate whether the settlement is fair and equitable: (1) the probability of success in the litigation; (2) the difficulties, if any, to be encountered in the matters of collection; (3) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (4) the paramount interest of the creditors and a proper deference to their reasonable views. *See In re A & C Properties*, 784 F.2d at 1381.  Consideration of these factors does not require the court to determine whether a settlement presented is the best one that could possibly have been achieved.  Rather, the court need only canvas the issues to determine whether the settlement falls "below the lowest point in the zone of reasonableness." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *In re Pacific Gas & Electric Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004).  Also, although the court should give deference to the reasonable views of creditors, "objections do not rule.  It is well established that compromises are favored in bankruptcy." *In re Lee*

*Way Holding Co.*, 120 B.R. 887, 891 (Bankr. S.D. Ohio 1990); *see also In re A & C Properties*, 784 F.2d at 1384.

Here, the Settlement Agreement should be approved because it would and did increase competition at the auction by allowing Pacificor to credit bid, increase distributions to creditors by eliminating any deficiency claim of Pacificor following the Auction, and will save the Debtors from expending further energy and resources to litigating disputes with Pacificor, all of which are in the best interests of creditors.

**B.** **The Settlement Agreement Was Negotiated In Good Faith And Is Reasonably Believed To Be The Best Compromise Under The Facts**

The Settlement Agreement was the result of good faith and arm's-length negotiations between the Debtors, on the one hand, and Pacificor, on the other hand, undertaken in an effort to resolve efficiently and effectively the host of disputes between the parties and enable Pacificor to credit bid at the Auction for the ultimate benefit of the Estates and its creditors. The Settlement Agreement is the best compromise negotiable under the circumstances and in the best interest of the Estates. Pursuant to the Settlement Agreement, Pacificor's allowed claim will be fixed at approximately $36 million (plus approximately $2.1 million of administrative expenses to be paid), thereby providing the Debtors with certainty regarding the amount of the claim and allowing Pacificor to credit bid at the Auction. Pacificor's meaningful participation at the Auction would and did prove invaluable in generating competition among the bidders and maximizing the sale price for the benefit of creditors. Given that the sale process is coming to a conclusion, the Settlement Agreement is the best deal under the circumstances and arrives at an opportune moment for the Debtors and their creditors.

Moreover, the Settlement Agreement provides two mechanisms that ensure the fairness of the bidding procedures and outcome of the Auction with respect to Pacificor's Allowed Claim and the Estates' recovery. First, by allowing Pacificor to maintain its deficiency claim in the event the Debtors determine that the winning bid was one offered by another party with a cash component less than the amount of Pacificor's last credit bid, Pacificor is assured that the Debtors will not seek and accept a bid that is weighted unevenly or unfairly in favor of the future contingent compensation component, from which Pacificor would receive no recovery on its Allowed Claim. On the other hand, the Settlement Agreement requires that Pacificor pair any credit bid it makes with a future

contingent compensation component, from which the Estates can satisfy the claims of unsecured creditors. Without this requirement, it is probable that Pacificor would credit bid its full Allowed Claim, likely resulting in a chill on the bidding by other interested parties. Therefore, the terms of the Settlement Agreement, as it affects the Auction procedures, is fair and the best compromise negotiable under the circumstances.

**C.    The Agreement Is Fair And Equitable**

The factors promulgated by the Ninth Circuit in *In re A & C Properties* to establish that a compromise is fair and equitable all favor approval of the Settlement Agreement. The facts in the Debtors' bankruptcy cases demonstrate that, after considering (a) the probability of success in the litigation, (b) the difficulties in collecting on a judgment, (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attendant to litigation, and (d) the paramount interest of the Estates' creditors, the terms of the Settlement Agreement are fair and equitable, and approval of the Settlement Agreement is in the best interest of the Estate.

(i)    The Probability Of Success Is Uncertain.

While the Debtors believe that each of their claims are meritorious, the Debtors are engaged in a number of disputes with Pacificor, the outcomes of which are uncertain. For example, the disputes arising from the February 2009 Agreement, recently ordered to arbitration, involves the difficult interpretation of broad release language and contract interpretation that may result in an arbitration decision adverse to the Debtors. Furthermore, as the Debtors' cases have demonstrated, the disputes with Pacificor, as a secured creditor, impact a wide array of matters in the bankruptcy where, from one matter to another, the likelihood of the Debtors obtaining a successful outcome is unknown.

(ii)    Difficulties In Collection.

The Debtors' claims against Pacificor largely relate to the amount of Pacificor's claim against the Estates. However, the Debtors also have asserted claims for damages against Pacificor, among others, in the Adversary Action, which, if adjudicated in the Debtors' favor, may lead to difficulties, delay and expense in collection efforts and potential issues regarding set off rights.

(iii)    Further Litigation Is Likely To Be Complex, Expensive, Inconvenient And Delay The Efficient Administration Of Debtors' Bankruptcy Cases.

Absent approval of the Settlement Agreement, the disputes between the parties likely would

result in the need to litigate and to resolve multiple, complex legal and factual issues through litigation, arbitration and motion practice.    The Adversary Action involves issues of contractual interpretation and application, and will require significant factual discovery with respect to the parties' understanding and intent throughout the course of their dealings.  The Adversary Action also includes causes of action for fraud and lender liability claims that will necessitate substantial discovery, including written discovery and document production, depositions of multiple parties and expert witness testimony.

Given the complexity of the issues, the fact-intensive nature of the disputes and the number of parties involved, complete litigation and resolution of the disputes between the Debtors and Pacificor likely would take months, if not years, resulting in significant expense to the Estates and delay in the Debtors' reorganization efforts.

(iv)    The Settlement Agreement Is In The Best Interest Of Creditors.

The Settlement Agreement provides substantial benefit to the Debtors' creditors because Pacificor's Allowed Claim is satisfied in full and, except under limited circumstances, Pacificor waives its right to assert a deficiency claim against the Debtors and their Estates.  Therefore, the Settlement Agreement guarantees that there will be no secured claims against the Estates' remaining assets (other than Susan Guinn's disputed claim), maximizing the return for other creditors.  If the Settlement Agreement is not approved and Pacificor's claim ultimately is adjudicated and allowed in full, recoveries for other creditors likely would be minimal, if anything.  For example, the Auction's stalking horse bid from Lions Gate for $15 million in cash plus future contingent compensation, that the Debtors valued at $24.2 million, if successful, could leave Pacificor with a deficiency claim of approximately $12 to 14 million, part or all of which could be a first priority secured deficiency that would receive distributions in advance of the other creditors and likely exhaust any amounts available for distribution to other creditors.  However, if the Settlement Agreement is approved, Pacificor's deficiency claim will be released and distributions to the Debtors from, without limitation, contingent compensation generated from the sale, distributions from the T3 and T4 CAMs, including Dominion's production fees, and any amounts gained from the Debtors' causes of action, including claims against their former legal counsel, will be available for payment to creditors other than Pacificor.

Further, the Settlement Agreement is in the best interest of the Estates because it allows for the

cash payment of $2,179,000 from Pacificor's recovery on its Allowed Claim to cover the Estates' administrative expenses, which amount otherwise would be paid before any distribution to general unsecured creditors.  Accordingly, the Court should approve the Settlement Agreement.

## IV.

## <u>CONCLUSION</u>

For the foregoing reasons, the Debtors respectfully submit that the Motion should be approved and request that the Court enter an Order (1) granting the Motion, (2) approving the Settlement Agreement and authorizing the Debtors to enter into and to perform their obligations under the Settlement Agreement, and (3) granting such other and further relief as the Court deems proper.

Date:  February 9, 2010

PEITZMAN, WEG & KEMPINSKY LLP

By:    /s/ Monsi Morales                    .
          Monsi Morales
          Julian I. Gurule
Attorneys for the Debtors and Debtors in Possession

## DECLARATION OF DEREK ANDERSON

I, Derek Anderson, hereby declare:

1.      I am the co-Chief Executive Officer of T Asset Acquisition Company, LLC ("TAC") and Halcyon Holding Group, LLC ("HHG") and the co-Member of Dominion Group, LLC ("Dominion," and together with TAC and HHG, the "Debtors"). I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would competently testify thereto.

2.      I make this declaration in support of the Debtors' Motion For Order Approving Settlement Agreement Between Debtors And Pacificor, LLC (the "Motion"). Capitalized terms used and not defined herein have the same meaning ascribed to them in the Motion.

3.      On February 8, 2010, the Debtors, their insiders, and affiliated entities, on the one hand, and Pacificor, LLC; Deep Value Hedged Income-1; Coca-Cola Inc.; Pacificor Offshore Fund Ltd.; Pacificor Fund LP; and Pacificor Fund II LP (collectively, "Pacificor"), on the other hand, among others, entered into the Settlement, Bidding & Release Agreement (the "Settlement Agreement"). A true and correct copy of the Settlement Agreement is attached hereto as Exhibit 1 and it is incorporated herein by this reference.

4.      The Settlement Agreement resolves disputes between the Debtors and Pacificor that have been contested since before the Debtors filed their bankruptcy petitions. Over the course of the Debtors' objections to Pacificor's claims against the estates and the Debtors' disputes with Pacificor, the Debtors have expended substantial amounts of time, energy and resources in defending themselves and in asserting claims on their own behalf. While I believe that the Debtors' claims against Pacificor are meritorious, the litigation with Pacificor implicates complex issues, will take substantial time to resolve, demand a great amount of attention from the Debtors, and may, in the end, result in collection problems should the Debtors be successful.

5.      As the sale of the Franchise began to reach, and has now reached, a critical point, and because, among other things, the Debtors' disputes with Pacificor barred Pacificor from participating in the auction for the Franchise, the Debtors began good faith and arm's-length settlement negotiations

with Pacificor.  These discussions culminated in the Settlement Agreement.

6.    I believe that the Settlement Agreement reflects the best deal under the circumstances because it lays out terms under which Pacificor may further participate in the auction of the Franchise. Pacificor's participation is likely to, among other things, increase competition among the various bidders, which will very likely have a positive impact on the amount garnered by the auction.

7.    The Settlement Agreement is in the best interests of creditors because it provides for certainty with regard to Pacificor's allowed claim against the Debtors and frees the Debtors from expensive, distracting, and time-consuming litigation.  For example, continued litigation with Pacificor may require additional discovery and depositions, which are expensive, in addition to pulling the Debtors' attention from their business and the administration of the Estate.  By resolving the Pacificor disputes and the attendant distraction and delay, creditors may also benefit because the Debtors may be able to more speedily administer their estates.

8.    Additionally, I believe that the Settlement Agreement is in the best interests of the Debtors' creditors because, except under limited circumstances, it provides that Pacificor waives any deficiency claim.  If the Settlement Agreement is not approved and Pacificor maintains its right to a deficiency claim, recoveries for other creditors are likely to be negatively impacted.  For example, the auction's stalking horse bid that the Debtors valued at $24.2 million, if successful, could leave Pacificor with a deficiency claim of approximately $12-14 million, part or all of which could be a first priority secured deficiency that would receive distributions in advance of the other creditors and likely exhaust any amounts available for distribution to other creditors.  However, if the Settlement Agreement is approved, Pacificor's deficiency claim will be released and distributions to the Debtors from, without limitation, contingent compensation generated from the sale, distributions from the T3 and T4 CAMs, Dominion's production fees, and any amounts gained from the Debtors' causes of action, including claims against their former legal counsel, will be available for payment to creditors other than Pacificor.

9.    Further, the Settlement Agreement is in the best interest of the Estates because it allows for the payment of $2,179,000 to cover the Estates' administrative expenses, which otherwise would be paid before any distribution to general unsecured creditors.

1    I declare that the foregoing is true and correct to the best of my knowledge.

2    Executed this 8th day of February, 2010 at Los Angeles, California.

3

4                                                    _____
                                                          Derek Anderson
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

## SETTLEMENT, BIDDING & RELEASE AGREEMENT

This Settlement, Bidding & Release Agreement (the "Agreement") is made and entered into as of the 8th day of February 2010 ("Agreement Date") and shall be effective on the date set forth in Section 5.10 below (the "Effective Date"), and is by and between the following:

- Halcyon Holding Group, LLC (d/b/a The Halcyon Company), a Delaware limited liability company ("Halcyon") and all of its affiliates, parents and subsidiaries signatory hereto, each as a debtor and debtor in possession, including: T Asset Acquisition Company, LLC, a Delaware limited liability company ("T Asset"); Dominion Group LLC (d/b/a or a/k/a Dominion LLC), a California limited liability company ("Dominion"); T Asset International (BVI) Ltd. ("T Asset International"); T Salvation Distribution, LLC ("T Distribution"); T Salvation Distribution (BVI) Ltd. ("T Distribution International"); T Salvation Productions, LLC ("T Productions"); Halcyon Consumer Products, LLC ("HCP"); Halcyon Games, LLC ("Games"); Halcyon International (BVI) Ltd. ("Halcyon International"); Halcyon Music Publishing, LLC (d/b/a Halcyon Worldwide Music Publishing) ("Halcyon Music") (collectively the "Halcyon Parties") (each of the Halcyon Parties is individually and collectively referred to as a "Debtor");

- Derek Anderson and Victor Kubicek, in their individual capacities and as the sole owners of Dominion and, indirectly, as the principal owners of the other Halcyon Parties (the "Individuals"); and

- Deep Value Hedged Income-1, Coca-Cola Inc., Pacificor Offshore Fund Ltd., Pacificor Fund LP and Pacificor Fund II LP (collectively, the "Secured Lenders"); and

- Pacificor, LLC (the "Administrative Agent").

Each of the Halcyon Parties, the Individuals, the Secured Lenders and the Administrative Agent is sometimes referred to individually herein as a "Party" and collectively as the "Parties."

## RECITALS

**WHEREAS**, the Parties allege the following:

A.    The Secured Lenders and the Administrative Agent entered into a Loan and Security Agreement dated as of April 16, 2007, pursuant to which the Secured Lenders agreed to loan Halcyon and T Asset up to $30,000,000 (the "Original Loan");

B.    Halcyon and T Asset utilized the proceeds from the Original Loan to acquire rights relating to the "Terminator" movie franchise (the "Terminator Rights");

C.    Halcyon borrowed an additional $5,000,000 from Pacificor Fund II LP pursuant to the Loan and Security Agreement dated as of December 31, 2007, for working capital purposes (as amended, the "Bridge Loan");

EXHIBIT 1
Page 15

D.      Halcyon, T Asset and the Secured Lenders amended the Original Loan by executing the Amended Loan and Security Agreement dated as of February 12, 2009 (as amended, the "Original Loan First Amendment");

E.      Halcyon and Pacificor, LLC amended the Bridge Loan by executing the Amended and Extension of Loan and Security Agreement dated as of February 12, 2009 (as amended, the "Bridge Loan First Amendment");

F.      On February 16, 2009, Halcyon, T Asset and Pacificor, LLC entered into an agreement (the "Settlement Agreement") to resolve, among other things, disputes between Halcyon, T Asset and Pacificor, LLC concerning, among other things, alleged defaults under the Bridge Loan and the involvement of Kurt Benjamin in negotiations relating to the Original Loan and the Bridge Loan (the "Benjamin Disputes");

G.      In conjunction with the Settlement Agreement, on or about February 16, 2009, Halcyon, and the Secured Lenders further amended the Original Loan by executing the Second Amended Loan and Security Agreement dated as of February 12, 2009 (the "Original Loan Second Amendment");

H.      In conjunction with the Settlement Agreement, on or about February 27, 2009, T Asset, certain of the Secured Lenders and the Administrative Agent entered into a Term Loan and Security Agreement pursuant to which certain of the Secured Lenders agreed to loan T Asset an additional $2,000,000 (the "New Loan");

I.      T Asset, certain of the Secured Lenders and the Administrative Agent amended and restated the New Loan by executing the Amended and Restated Term Loan and Security Agreement dated March 23, 2009 (effective as of February 27, 2009), pursuant to which certain of the Secured Lenders agreed to loan T Asset an additional $4,000,000 (the "Amended New Loan");

J.      On or about April 13, 2009, Halcyon, T Asset, the Secured Lenders and the Administrative Agent entered into a Global Restatement of Amendments to Loan and Security Agreements (the "Global Restatement");

K.      On August 3, 2009, the Administrative Agent notified Halcyon and T Asset that Halcyon was in default under the terms of the Bridge Loan and, through cross-default provisions, that both Halcyon and T Asset were in default under the Original Loan and the Amended New Loan;

L.      On or about August 17, 2009, Dominion filed a lawsuit in the Los Angeles County Superior Court entitled *Dominion Group, LLC vs. Pacificor, LLC*, Case No. BC419963 (the "State Court Action") seeking, among other things, to expunge a UCC-1 Financing Statement filed by the Administrative Agent against certain of Dominion's assets and alleging that the Settlement Agreement extinguished Halcyon's and T Asset's loan obligations under the Original Loan and the Bridge Loan (the "Release Claim");

M.      The Administrative Agent disputed the allegations set forth in the State Court Action;

2

EXHIBIT 1
Page 16

N.      Dominion thereafter dismissed the State Court Action without prejudice;

O.      On August 17, 2009 (the "Petition Date"), Halcyon, T Asset and Dominion (collectively, the "Original Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court") and, on August 27, 2009, the Bankruptcy Court ordered the joint administration of the Original Debtors' cases under Case No. 2:09-31853-ER (collectively, the "Bankruptcy Cases");

P.      On or about September 17, 2009, the U.S. Trustee appointed an Official Committee of Unsecured Creditors (the "Creditors Committee") to represent the interests of the unsecured creditors in the Bankruptcy Cases;

Q.      Various disputes arose between and among the Debtors, the Creditors Committee, the Secured Lenders and the Administrative Agent during the course of the Bankruptcy Cases, including the Debtors' reassertion of the Release Claim;

R.      On or about November 23, 2009, the Administrative Agent filed a motion in the Bankruptcy Court seeking to compel arbitration of the Release Claim (the "Arbitration Motion");

S.      On or about November 25, 2009, the Original Debtors filed an adversary proceeding in the Bankruptcy Court in connection with the Bankruptcy Cases against the Secured Lenders, the Administrative Agent and others asserting, among other claims, the Release Claim and reasserting the other State Court Action claims (the "Adversary Proceeding");

T.      The Secured Lenders and the Administrative Agent deny the allegations contained in the Adversary Proceeding;

U.      On or about December 18, 2009, the Original Debtors filed their *Motion of Debtors For Order Establishing Sale Procedures For Sale of Debtors' Assets Relating To The Terminator Motion Picture Franchise Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Sections 363 and 365 of the Bankruptcy Code* (the "Sale Procedures Motion") seeking to establish a process to sell certain rights relating to the Terminator film franchise, and their *Motion of Debtors For Order Authorizing and Approving  Sale of Debtors' Assets Relating To The Terminator Motion Picture Franchise Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Sections 363 and 365 of the Bankruptcy Code* (the "Sale Motion");

V.      On or about January 5, 2010, the Administrative Agent filed with the Bankruptcy Court an Opposition to the Sale Procedures Motion and a Cross Motion for a determination that the Release Claim did not present a "bona fide" dispute or, in the alternative, seeking to compel the Release Claim to arbitration on an expedited basis (the "Cross Motion");

W.      For the reasons set forth in the Cross-Motion, among others, the Secured Lenders allege that they have secured claims against the Estates in an amount, including interest, fees and expenses, of approximately $38 million that may be "credit bid" to purchase all of the rights and assets that the Halcyon Parties' seek to sell through the Sale Motion and that the liens granted in

EXHIBIT 1
Page 17

connection with the Bridge Loan extend to all such assets based on, among other things, alter-ego or substantive consolidation theories of relief;

X.    On or about January 9, 2010, T Asset International, T Distribution, T Distribution International, T Productions, HCP, Games, Halcyon International and Halcyon Music (collectively, the "Additional Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and, on January 22, 2010, the Bankruptcy Court ordered the joint administration of the Additional Debtors' cases with the Original Debtors' cases under Case No. 2:09-31853-ER;

Y.    On January 20, 2010, the Bankruptcy Court issued a tentative ruling denying the Cross Motion;

Z.    On or about January 28, 2010, the Bankruptcy Court entered an its *Order Granting Motion of Debtors For Order: (1) Establishing Sale Procedures For Sale of Certain of the Debtors' Terminator Assets, (2) Approving Break-Up Fee, and (3) Approving Form and Manner of Notice of Sale* (the "Sales Procedures Order"), which, among other things, (a) approved a "stalking horse" bid submitted by Lions Gate Films, Inc. (the "Lions Gate Bid") on the terms set forth in an Asset Purchase Agreement dated as of January 7, 2010 (the "Lions Gate APA"); (b) set a deadline of February 4, 2010 at 5:00 p.m. for the submission of overbids; and (c) scheduled an auction (the "Auction") between "Qualified Bidders" for 10:00 a.m. on February 10, 2010;

AA.   On February 4, 2010, the Bankruptcy Court entered an Order granting the Arbitration Motion, compelling arbitration of the Release Claim on an expedited basis;

BB.   Absent a resolution of the various disputes among the Parties, the Secured Lenders would not be able to participate in the Auction by the use of a "credit bid;" and

CC.   The Parties believe it is in the best interests of the Original Debtors, the Additional Debtors, the Creditors Committee and other interested parties in the Bankruptcy Cases for (a) the Secured Lenders and the Administrative Agent to be permitted to participate in the Auction through the use of a credit bid; and (b) the Parties to resolve all claims, disputes and charges by, between and among them, in accordance with the terms and subject to the conditions set forth herein.

**NOW THEREFORE,** based on the above premises and in consideration of the mutual promises, covenants, conditions and agreements contained herein, and subject to the approval of the Bankruptcy Court after notice and a hearing, the Parties agree as follows:

## AGREEMENT

## ARTICLE I.

## ALLOWED CLAIM AND AUCTION

*Section 1.01*   Allowed Claim.  It is acknowledged and agreed by and among the Parties that in consideration of the secured indebtedness by Halcyon and T Asset pursuant to the Original Loan,

EXHIBIT 1
Page 18

the Bridge Loan and the Amended New Loan, including all principal, interest and accrued fees thereunder, the Secured Lenders and the Administrative Agent shall have an allowed claim against the Estates in the amount of Thirty Eight Million One Hundred Seventy Nine Dollars ($38,179,000.00) (the "Allowed Claim"), recoverable against the bankruptcy estates of the Halcyon Parties (the "Estates") solely as provided hereunder;

**Section 1.02**    Credit Bid

(a)    The Secured Lenders and the Administrative Agent have submitted a bid for the "Granted Terminator Assets" (as defined in the Lions Gate APA) with a credit bid component of Twenty Five Million Dollars ($25,000,000.00) and a "Rights Participation" amount (defined below) on the terms set forth in the Asset Purchase Agreement attached hereto as Exhibit A. The bid contained in Exhibit A is deemed to be a "Qualifying Bid" as defined in the Sale Procedures Order.

(b)    The Secured Lenders and the Administrative Agent (the "Lender Bidders") shall have the right, but not the obligation, to participate further in the Auction subject to the following terms and conditions:

(i)    The incremental credit bids by the Lender Bidders shall be in an amount no less than One Million Dollars ($1,000,000.00) unless and until the credit bid component of a bid by the Lender Bidders or the cash component of a bid by another bidder equals Thirty Million Dollars ($30,000,000.00). Thereafter, incremental credit bids by the Lender Bidders shall be in an amount no less than Five Hundred Thousand Dollars ($500,000.00).

(ii)    Any additional bids by the Lender Bidders shall include the payment of (x) the Rights Participation; (y) a contingent consideration component on terms which are the financial equivalent of the "Contingent Consideration" component of the Lions Gate Bid as set forth in Schedule 1.7(a) of the Lions Gate APA, without any deduction for any "Deemed Cash Payment" (as defined in the Lions Gate APA); or (z) a contingent consideration component that is financially superior to either (x) or (y), as initially determined by the Halcyon Parties' financial advisors, subject to review and approval of the Bankruptcy Court.

(c)    For the purposes of this Agreement, the term "Rights Participation" shall mean a cash payment of Five Million Dollars ($5,000,000.00) upon the commencement of "Principal Photography" (as that term is commonly used in the motion picture industry) with respect to each theatrical motion picture that is a "Sequel" (as defined in the Lions Gate APA).

**Section 1.03**    Results of the Auction

(a)    All bids at the Auction shall be considered comprised of (i) a "Cash Component" consisting of the amount of cash to be paid, or credit bid to be offset, by the winning bidder concurrent with the closing of a sale transaction, and (ii) "Contingent

EXHIBIT 1
Page 19

Compensation" consisting of any future cash or consideration to be received by the Estates, or their assignee or nominee, in connection with future exploitation of the Granted Terminator Assets or otherwise.

(b)     Should the Lender Bidders submit the winning bid at the Auction and have their bid approved by the Bankruptcy Court as the winning bid, then, upon the close of a sale transaction, in full and complete satisfaction of the Allowed Claim, the Lender Bidders shall

> (i)     pay in cash administrative expenses of the Estates in the aggregate amount of Two Million One Hundred Seventy Nine Thousand Dollars ($2,179,000.00) (the "Administrative Fees and Settlement Expenses"), less the Five Hundred Fifty Thousand Dollar ($550,000.00) cash deposit submitted with the Lender Bidders' Qualifying Bid which shall also be transferred to pay administrative expenses of the Estates, including the payment of $150,000 to MGM and $29,000 to Canal Plus on the close of the sale transaction; and

> (ii)    acquire the Granted Terminator Assets on the terms and subject to the conditions set forth in the approved asset purchase agreement.

(c)     Should the Lender Bidders not be the winning bidder at the Auction, then upon the close of a sale transaction, in full and complete satisfaction of the Allowed Claim, the Lender Bidders shall

> (i)     receive all of the Cash Component paid by the winning bidder at the closing of the transaction, up to the amount of the Allowed Claim; and

> (ii)    pay in cash administrative expenses of the Estates in the aggregate amount of Two Million One Hundred Seventy Nine Thousand Dollars ($2,179,000.00), less the Five Hundred Fifty Thousand Dollar ($550,000.00) cash deposit submitted with the Lender Bidders' Qualifying Bid which shall be transferred to pay administrative expenses of the Estates.

*Section 1.04*    Deficiency Claim

(a)     Except as set forth herein, upon the closing of a sale transaction and the receipt of either (i) the Granted Terminator Assets under the terms of an asset purchase agreement, or (ii) the Cash Component of the winning bid for the Granted Terminator Assets (up to the amount of the Allowed Claim), the Lender Bidders waive any further right to receive any distribution on account of the Allowed Claim, including any right to assert a deficiency claim against the Estates.

> (i)     The foregoing notwithstanding, if the Lender Bidders are not the winning bidders at Auction, and the Cash Component of the winning bid is less than the amount of the credit bid component of the Lender Bidders' final bid, then the Lender Bidders shall have an allowed deficiency claim

6

EXHIBIT 1
Page 20

against the Estates' (including any assignee, transferee or successor in interest) rights and interests in the Contingent Compensation component of the winning bid (the "Lender Deficiency Claim"). The Lender Deficiency Claim shall be an amount, not to exceed Ten Million Dollars ($10,000,000.00), equal to the difference between the Cash Component of the winning bid and the credit bid component of the Lender Bidders' last bid (the latter of which may not exceed Thirty Six Million Dollars ($36,000,000.00)).

(ii)    Should the Lender Bidders have a Lender Deficiency Claim, (1) the Parties agree that the Lender Deficiency Claim shall bear interest at the rate of Eight Percent (8%) per annum until paid, and (2) the Lender Bidders agree that the Lender Deficiency Claim shall be payable solely from the Contingent Compensation components of the winning bid and not from any other assets of the Estates.

## ARTICLE II.

## EQUITY INTEREST

*Section 2.01*    Equity Interest. Notwithstanding anything to the contrary in this Agreement, the Secured Lenders and the Administrative Agent shall retain their rights to an "Equity Interest" in all distributions made by T Asset, after all claims against the Estates have been paid in full, on the terms and conditions set forth in the Amended Section 11.1 to the Original Loan as set forth in the Original Loan Second Amendment.

## ARTICLE III.

## DISMISSAL OF ADVERSARY PROCEEDING

*Section 3.01*    Dismissal of Adversary Proceeding. On the Effective Date, the Halcyon Parties shall dismiss the Adversary Proceeding against all of the defendants, other than Kurt Benjamin, with prejudice. In their sole and absolute discretion, the Halcyon Parties may continue to prosecute or may dismiss the Adversary Proceeding against Kurt Benjamin.

## ARTICLE IV.

## RELEASES

*Section 4.01*    Release of Claims by the Parties

(a)    For a valuable consideration, the receipt and adequacy of which is hereby acknowledged, and except as specifically set forth in Section 4.03 below, the Secured Lenders and the Administrative Agent (the "Lender Releasors"), and each of them,  do hereby release and forever discharge the Halcyon Parties, the Individuals and each of them and all of their predecessors, successors, estates, agents, representatives, employees, officers, directors, partners, members, trusts, trustees, heirs, assigns, past and present, and their attorneys, and all persons acting by, through, under or in concert with them or any

7

EXHIBIT 1
Page 21

of them (the "Halcyon Releasees"), of and from any and all manner of action or actions, cause or causes of action, direct or derivative, in law or in equity, for indemnity or otherwise, suits, debts, liens, contracts, agreements, promises, liabilities, claims, rights, demands, damages, losses, costs, or expenses, of any nature whatsoever, known or unknown, fixed or contingent (hereinafter called "Lender Claims"), which the Lender Releasors and each of them now have or may hereafter have against the Halcyon Releasees and each of them by reason of any matter, cause or thing whatsoever from the beginning of time to the date of this Agreement.

(b)     For a valuable consideration, the receipt and adequacy of which is hereby acknowledged, and except as specifically set forth in <u>Section 4.03</u> below, the Halcyon Parties, the Individuals, and each of them (the "Halcyon Releasors") do hereby release and forever discharge the Secured Lenders, original lenders under the Original Loan, the Administrative Agent, Andy Mitchell and each of them, and all of their predecessors, successors, agents, representatives, employees, officers, directors, partners, members, trusts, trustees, heirs, assigns, past and present, and their attorneys, and all persons acting by, through, under or in concert with them or any of them (the "Lender Releasees"), of and from any and all manner of action or actions, cause or causes of action, direct or derivative, in law or in equity, for indemnity or otherwise, suits, debts, liens, contracts, agreements, promises, liabilities, claims, demands, damages, losses, costs, or expenses, of any nature whatsoever, known or unknown, fixed or contingent (hereinafter called "Debtor Claims"), which the Halcyon Releasors now have or may hereafter have against the Lender Releasees by reason of any matter, cause or thing whatsoever from the beginning of time to the date of this Agreement.

*Section 4.02*    <u>Scope of the Releases</u>

(a)     Without limiting the generality of the foregoing, the Claims released herein include, but are not limited to:

(i)     all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action (including claims or causes of action arising under Chapter 5 of the Bankruptcy Code), and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the date of this Agreement in any way relating to the Halcyon Parties, the conduct of the Halcyon Parties' business, the Original Loan, as amended, the Bridge Loan, as amended, and/or the Amended New Loan;

(ii)    (1) Claims alleged in the State Court Action; (2) Claims alleged in the Adversary Proceeding; (3) Claims which could have been alleged in connection with the State Court Action or Adversary Proceeding by counter-claim, cross-claim or otherwise; (4) any property, contract or tort claims, including breach of contract, breach of the covenant of good faith and fair dealing, rescission, reformation, retaliation, intentional or

8

EXHIBIT 1
Page 22

negligent infliction of emotional distress, tortious interference with contract or existing or prospective economic advantage, negligence, fraud, misrepresentation, invasion of privacy, defamation, breach of fiduciary duty, violation of public policy, conversion, assault, battery, legal malpractice or any other common law claim of any kind; (5) any alleged violation of the United States Bankruptcy Code; (6) any alleged violation of any state or common law cause of action governing fraudulent or preferential transfers; (7) any alleged violation of the California or Uniform Commercial Code; (8) any claim relating to or arising under any other local, state or federal statute or principle of common law governing or in any way relating to the relationship between borrower and lender and/or debtor and creditor; and (9) any Claim of conspiracy to commit or aid and abet any of the foregoing.

*Section 4.03*    Limitations on the Releases

(a)    Notwithstanding anything to the contrary set forth above, the Parties expressly acknowledge and agree that the releases contained in this Article IV are not intended to apply to (x) Kurt Benjamin, (y) Susan Guinn or (z) the obligations and representations of the Parties set forth in this Agreement.

*Section 4.04*    Unknown Claims

(a)    THE PARTIES FURTHER ACKNOWLEDGE THAT THEY HAVE BEEN ADVISED OF AND ARE AWARE THAT CALIFORNIA CIVIL CODE § 1542, PROVIDES AS FOLLOWS:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

THE PARTIES BEING AWARE OF SAID CODE SECTION AND SUCH SIMILAR LAWS, HEREBY EXPRESSLY WAIVE ANY RIGHTS THEY MAY HAVE THEREUNDER, AS WELL AS UNDER ANY OTHER STATUTES OR COMMON LAW PRINCIPLES OF SIMILAR EFFECT.

*Section 4.05*    No Assignment of Released Claims

(a)    The Parties represent and warrant that there has not been any assignment or other transfer of any interest in any of the released Claims and there will be no assignment or other transfer of any interest in any of the released Claims. The Parties agree to indemnify and hold their respective releasees, and each of them, harmless from any liability, claims, demands, costs, expenses and attorneys' fees incurred by such releasees, or any of them, as a result of any person asserting any such assignment or transfer or any rights to Claims under any such assignment or transfer.

9

EXHIBIT 1
Page 23

(b)     The Parties agree that if they hereafter commence, join in, or in any manner seek relief against any of their respective releasees hereunder through any suit arising out of, based upon, or relating to any of the Claims released hereunder or in any manner assert against such releasees, or any of them, any of the Claims released hereunder, then the offending Party shall pay in addition to any other damages caused thereby, all attorneys' fees and costs incurred by such releasees in defending or otherwise responding to said suit or claim.

## ARTICLE V.

## MISCELLANEOUS

*Section 5.01*    No Admission.  By entering into this Agreement, (i) neither the Secured Lenders nor the Administrative Agent admits or confesses liability to any claim that the Halcyon Parties, the Individuals or the Creditors Committee have or purport to have against the Secured Lenders and/or the Administrative Agent, nor do they admit or confess to the invalidity or unenforceability of their liens on any of the Debtors' assets; and (ii) neither the Debtors nor the Individuals admits or confesses liability to any claims or interests.  Nothing herein shall be deemed to be an admission of any Party to any factual allegation or recital contained herein.

*Section 5.02*    Captions.  The captions in this Agreement are for convenience only, are not part of this Agreement, do not in any way limit or amplify the terms and provisions of this Agreement, and shall have no effect on its interpretation.

*Section 5.03*    Agreement Jointly Drafted.  This Agreement shall not be construed against any Party to the Agreement on the ground that such Party drafted this Agreement, but shall be construed as if all Parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not on that ground be interpreted against any one Party.

*Section 5.04*    Advice Of Counsel Obtained.  Each of the Parties has obtained the advice of legal counsel prior to executing this Agreement, and each enters into this Agreement freely and voluntarily and with a full understanding of its terms and significance.

*Section 5.05*    Choice of Law.  To the extent not governed by the Bankruptcy Code, this Agreement shall be construed and enforced in accordance with the laws of the State of California without giving effect to principles of conflicts of law thereof which might otherwise require the application of the law of another jurisdiction.

*Section 5.06*    Consent to Jurisdiction and Venue.  The Parties hereby agree that any and all matters related to the interpretation and enforcement of this Agreement shall be subject to the jurisdiction of the United States Bankruptcy Court for the Central District of California, and the Parties hereby consent to such jurisdiction and venue.  The Bankruptcy Court may interpret or enforce this Agreement on motion by any Party in accordance with applicable rules.

*Section 5.07*    Severability.  If any of the provisions, terms, clauses, waivers or releases of claims or rights contained in this Agreement are declared illegal, unenforceable or ineffective in a legal or other forum or proceeding, then the Parties agree to negotiate in good faith to substitute

EXHIBIT 1
Page 24

provisions, terms, clauses, waivers or releases that would have, to the maximum extent possible, identical effect and that would be enforceable.

*Section 5.08*    Binding Effect.  The Agreement shall be binding upon and shall inure to the benefit of the Parties and their heirs, successors and assigns.  Other than as explicitly set forth in this Agreement, nothing in this Agreement is intended to, or does, create any rights in third parties.

*Section 5.09*    Integration.  This Agreement embodies the entire agreement and understanding between the Parties and supersedes all prior agreements and understandings relating to the subject matter hereof.

*Section 5.10*    Bankruptcy Court Approval.

       (a)    Not later than at the February 10, 2010 hearing on the Sale Motion, or at such other time as the Bankruptcy Court shall direct, the Debtors shall seek approval of this Agreement from the Bankruptcy Court, pursuant to Federal Rule of Bankruptcy Procedure 9019, at the Debtors' sole expense.  Each of the Debtors, the Halcyon Parties, the Individuals, the Secured Creditors, the Administrative Agent and the Creditors Committee shall support the motion seeking Bankruptcy Court approval of this Agreement, and each agrees to take all steps reasonably necessary to secure such prompt approval. The "Effective Date" shall be that date on which the Bankruptcy Court enters an order approving this Agreement.

       (b)    If the Bankruptcy Court fails or refuses to approve this Agreement, the terms of this Agreement and the Parties obligations hereunder shall terminate and be of no further force or effect.

*Section 5.11*    Notice.  Any notice or communication required by, or made in furtherance of, this Agreement, shall be sent via U.S. Mail, overnight delivery, e-mail, or facsimile to:

If to Secured Lenders and/or the Administrative Agent:

         Russell F. Sauer Esq.
         Wayne S. Flick, Esq.
         Kimberly A. Posin, Esq.
         Latham & Watkins LLP
         355 South Grand Avenue
         Los Angeles, California 90071-1560
         E-Mail: russ.sauer@lw.com;
         wayne.s.flick@lw.com;
         kim.posin @lw.com
         Facsimile: (213) 891-8763

EXHIBIT 1
Page 25

Pacificor, LLC
Andrew B. Mitchell, CFA
740 State Street
Suite 202
Santa Barbara, CA 93101
E-Mail: am@pacificor.com
Facsimile: (805) 435-1642

If to the Halcyon Parties:

Scott F. Gautier, Esq.
Howard Weg, Esq.
Peitzman, Weg & Kempinsky LLP
10100 Santa Monica Bld., Suite 1405
Los Angeles, CA 90067
E-mail; sgautier@pwkllp.com;
hweg@pwkllp.com
Facsimile: (310) 552-3101

If to the Individuals:

Derek Anderson
Victor Kubicek
c/o Lance Jurich, Esq.
Loeb & Loeb LLP
10100 Santa Monica Boulevard
Los Angeles, CA 90067
Email: ljurich@loeb.com
Facsimile:(310) 282-2192

*Section 5.12* <u>Authority</u>. Each person executing this Agreement represents and warrants that he or she has the full right and authority to enter into this Agreement on behalf of the Party hereto on whose behalf such execution is made, and has the full right and authority to fully bind said Party to the terms and obligations of this Agreement.

**IN WITNESS WHEREOF**, the Parties, by and through their duly authorized representatives, have hereunder set their hands and entered into this Agreement on the day and year first written below.

**[Signature Pages to Follow]**

12

EXHIBIT 1
Page 26

**HALCYON PARTIES AND THE INDIVIDUALS:**

| | |
|---|---|
| Dominion Group LLC (d/b/a or a/k/a Dominion LLC) a/ California limited liability company ("Dominion")<br><br><br>By:    Derek Anderson, Co-Managing Member<br><br><br>By:    Victor Kubicek, Co-Managing Member | Halcyon Holding Group, LLC (d/b/a The Halcyon Company), a Delaware limited liability company ("Halcyon")<br><br>    By:  Dominion Group, LLC<br>    Its Managing Member<br><br><br>By:    Derek Anderson, Co-Managing Member<br><br><br>By:    Victor Kubicek, Co-Managing Member |

EXHIBIT 1
Page 27

| | |
|---|---|
| T Asset Acquisition Company, LLC, a Delaware limited liability company ("T Asset")<br>T Asset International (BVI) Ltd. ("T Asset International")<br>T Salvation Distribution, LLC ("T Distribution")<br>T Salvation Distribution (BVI) Ltd. ("T Distribution International")<br>T Salvation Productions, LLC ("T Productions")<br>Halcyon Consumer Products, LLC ("HCP")<br>Halcyon Games, LLC ("Games")<br>Halcyon International (BVI) Ltd. ("Halcyon International")<br>Halcyon Music Publishing, LLC (d/b/a Halcyon Worldwide Music Publishing) ("Halcyon Music") | The Individuals:<br><br>_____<br>Derek Anderson<br><br>_____<br>Victor Kubicek |

Halcyon Company), a Delaware limited
liability company ("Halcyon"), the sole
owner

     By: Dominion Group, LLC
     Its Managing Member

_____
By:    Derek Anderson, Co-Managing
Member

_____
By:    Victor Kubicek, Co-Managing
   Member

EXHIBIT 1
Page 28

| By:    Derek Anderson, Co-Managing Member | |
| --- | --- |
| By:    Victor Kubicek, Co-Managing Member | |

**SECURED LENDERS AND ADMINISTRATIVE AGENT**:

| Deep Value Hedged Income-1 | Coca-Cola Inc. |
| --- | --- |
| By: <br> Its: | By: Andy Mitchell <br> Its: CEO, CIO Pacificor LLC |
| Pacificor Offshore Fund Ltd. | Pacificor Fund LP |
| By: Andy Mitchell <br> Its: CEO, CIO Pacificor LLC | By: Andy Mitchell <br> Its: CEO, CIO Pacificor LLC |
| Pacificor Fund II LP | ADMINISTRATIVE AGENT <br> Pacificor, LLC |
| By: Andy Mitchell <br> Its: CEO, CIO Pacificor LLC | By: Andy Mitchell <br> Its: CEO, CIO Pacificor LLC |

14

EXHIBIT 1
Page 29

**SECURED LENDERS AND ADMINISTRATIVE AGENT:**

| Deep Value Hedged Income-1 | Coca-Cola Inc. |
|---|---|
| By: R. Lance Baker<br>Its: Treasurer | By:<br><br>Its: |
| Pacificor Offshore Fund Ltd.<br><br>By:<br>Its: | Pacificor Fund LP<br><br>By:<br>Its: |
| Pacificor Fund II LP<br><br>By:<br>Its: | ADMINISTRATIVE AGENT<br>Pacificor, LLC<br><br>By:<br>Its: |

15

EXHIBIT 1
Page 30

| | |
|---|---|
| In re:  T Asset Acquisition Company, LLC,<br><br><br><br>Debtor(s). | CHAPTER  11<br><br>CASE NUMBER  2:09-bk-31853-ER<br><br>(Jointly Administered with Case Nos.: 2:09-31854-ER; 2:09-31855-ER; 2:10-bk-10851-ER; 2:10-bk-10852-ER; 2:10-bk-10853-ER; 2:10-bk-10854-ER; 2:10-bk-10855-ER; 2:10-bk-10856-ER; 2:10-bk-10857-ER; 2:10-bk-10858-ER) |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**10100 Santa Monica Boulevard, Suite 1450, Los Angeles, CA  90067.**

The foregoing document described **Motion For Order Approving Settlement Agreement Between Debtors and Pacificor; Declaration of Derek Anderson**, will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **February 9, 2010,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- David E Ahdoot      dahdoot@bushgottlieb.com, tjimines@bushgottlieb.com
- Korin A Avelino      kelliott@ktbslaw.com
- Austin K Barron      abarron@buchalter.com, IFS_filing@buchalter.com;tcarson@buchalter.com
- Sandor T Boxer      tedb@tedboxer.com
- Martin J Brill      mjb@lnbrb.com
- Alberto J Campain      acampain@blutlaw.com
- Leslie A Cohen      leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com
- Marc S Cohen      mcohen@kayescholer.com
- Jon L Dalberg      jdalberg@lgbfirm.com, mprokocki@lgbfirm.com
- Ashleigh A Danker      adanker@kayescholer.com
- Robert K Edmunds      robert.edmunds@bipc.com
- G Larry Engel      lengel@mofo.com
- Wayne S Flick      wayne.s.flick@lw.com, colleen.rico@lw.com
- Scott F Gautier      sgautier@pwkllp.com
- Julian I Gurule      jgurule@pwkllp.com
- Brian T Harvey      bharvey@buchalter.com, IFS_filing@buchalter.com
- Viviana B Hedrick      vhedrick@lglaw.la
- Robbin L Itkin      ritkin@steptoe.com
- Louis E Kempinsky      lkempinsky@pwkllp.com
- Joseph A Kohanski      jkohanski@bushquinonez.com
- Dare Law      dare.law@usdoj.gov
- David W Levene      dwl@lnbrb.com
- Richard Levy      rlevy@pryorcashman.com
- Monserrat Morales      mmorales@pwkllp.com
- Juliet Y Oh      jyo@lnbrb.com, jyo@lnbrb.com
- Katherine C Piper      kpiper@steptoe.com
- Kimberly A Posin      kim.posin@lw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                                          **F 9013-3.1**

| In re:  T Asset Acquisition Company, LLC,  Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 2:09-bk-31853-ER<br><br>(Jointly Administered with Case Nos.: 2:09-31854-ER; 2:09-31855-ER; 2:10-bk-10851-ER; 2:10-bk-10852-ER; 2:10-bk-10853-ER; 2:10-bk-10854-ER; 2:10-bk-10855-ER; 2:10-bk-10856-ER; 2:10-bk-10857-ER; 2:10-bk-10858-ER) |
|---|---|

- Jeremy V Richards    jrichards@pszjlaw.com, bdassa@pszjlaw.com
- Debra Riley    driley@allenmatkins.com
- David B Shemano    dshemano@pwkllp.com
- Adam M Starr    starra@gtlaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Jason Wallach    jwallach@gladstonemichel.com
- Pamela Kohlman Webster    pwebster@buchalter.com
- Howard J Weg    hweg@pwkllp.com

☐ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:**
On **February 9, 2010**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

**Served by Overnight Mail:**
United States Trustee (LA)
Dare Law
725 S Figueroa St., 26th Floor
Los Angeles, CA 90017

☒ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **February 9, 2010**, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed*

**Served by Personal Delivery:**
Honorable Ernest M. Robles
United States Bankruptcy Court - Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1560
Los Angeles, CA 90012

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| February 9, 2010 | Matthew M. Dryer | /s/ Matthew M. Dryer |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                    **F 9013-3.1**

| In re:  T Asset Acquisition Company, LLC, | CHAPTER  11 |
|---|---|
| Debtor(s). | CASE NUMBER  2:09-bk-31853-ER |
| | (Jointly Administered with Case Nos.: 2:09-31854-ER; 2:09-31855-ER; 2:10-bk-10851-ER; 2:10-bk-10852-ER; 2:10-bk-10853-ER; 2:10-bk-10854-ER; 2:10-bk-10855-ER; 2:10-bk-10856-ER; 2:10-bk-10857-ER; 2:10-bk-10858-ER) |

## ADDITIONAL SERVICE LIST:

### Served by Overnight Mail:

Morrison & Foerster LLP
Attention:  Norman Rosenbaum, Esq.
1290 Avenue of the Americas
New York, New York 10104-0050
Fax:  (212) 468-7900

and

Morrison & Foerster LLP
Attention:  Russell G. Weiss, Esq.
555 West Fifth Street, Suite 3500
Los Angeles, CA 90013-1024
Fax:  (213) 892-5454

### Served by Personal Delivery:

James R. Schoenfield, Esq.
Law Offices of James R. Schoenfield
A Professional Corporation
1801 Century Park East, Suite 2400
Los Angeles, CA 90067-2326
Fax:  (310) 551-2814

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                    **F 9013-3.1**