1  Dan Stormer, Esq. [S.B. #101967]
   Anne Richardson, Esq. [S.B. #151541]
2  Zoe Yuzna, Esq. [S.B. #268496]
   HADSELL STORMER KEENY
3      RICHARDSON & RENICK, LLP
   128 North Fair Oaks Avenue
4  Pasadena, California 91103-3645
   Telephone: (626) 585-9600
5  Facsimile: (626) 577-7079

6  Sandor T. Boxer, Esq. [S.B. #36288]
   tedb@tedboxer.com
7  LAW OFFICES OF SANDOR T. BOXER
   12400 Wilshire Boulevard, Suite 1300
8  Los Angeles, California 90025
   Telephone: (310) 826-9780
9  Facsimile: (310) 820-4414

10 ATTORNEYS FOR SUSAN L. GUINN

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>T ASSET ACQUISITION COMPANY, LLC, *et al*,<br>　　　　　　　Debtors.<br><br>**Check One or More as Appropriate:**<br>Affects T Asset Acquisition Company, LLC: ☒<br>Affects Halcyon Holding Group, LLC: ☒<br>Affects Dominion Group LLC: ☐<br>Affects one or more Affiliated Debtors: ☒<br>　Affiliated Debtor(s): <u>All Affiliated Debtors</u> | Case No: 2:09-31853-ER<br>Chapter 11<br><br>[Jointly Administered with Case Nos.: 2:09-31854-ER and 2:09-31855-ER 2:10-10853-ER, 2:10-10854-ER, 2:10-10855-ER, 2:10-10856-ER, 2:10-10857-ER, 2:10-10858-ER]<br><br>**OBJECTION OF SECURED CREDITOR SUSAN L. GUINN TO MOTION OF DEBTOR HALCYON HOLDING GROUP, LLC FOR ORDER AUTHORIZING AND APPROVING (1) SALE OF OPTION RIGHTS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, etc.**<br>**AND REQUEST FOR HEARING; DECLARATION OF SANDOR T. BOXER**<br><br>**Hearing**:<br><br>DATE:　　　To Be Set<br>TIME:　　　To Be Set<br>LOCATION:　Courtroom 1568 |

**TO THE HONORABLE ERNEST M. ROBLES AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Secured creditor Susan L. Guinn ("Guinn") objects to the Motion of Debtor Halcyon Holding Group, LLC ("HHG") for Order Authorizing and Approving (1) Sale of Option Rights Free and Clear of All Liens, Claims and Encumbrances, and (2) Perpetual, Royalty Free License to Use the Name "Halcyon" (the "Motion") and requests a hearing. By its Motion, Debtor HHG asks this Court to sanction a "something for nothing" deal, whereby the owners and principals of HHG, Derek Anderson and Victor Kubicek ("Insiders"), take all – the rights to a property to which the Debtors have ascribed substantial value, as well as the Debtors' trade name – and the Estate gets nothing – net profits, which are renowned in the entertainment industry for being worthless. In support of this bold proposal, HHG provides almost no evidence and no process for establishing market value. There is no evidence upon which to base a determination that the sale price is adequate or in the best interest of the Estate or that the purchaser is acting in good faith. Therefore, this Court should deny the Motion.

## I.
## LEGAL ARGUMENT

**A.   There Is Insufficient Evidence that the Proposed Sale is Fair and Reasonable and In the Best Interest of the Estate**

HHG properly cites *In re the Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985), for "[t]he standard to be applied in determining whether a sale should be authorized under section 363(b) [of the Bankruptcy Code] . . . [–] whether such a sale is in the best interests of the estate and the price is fair and reasonable." Motion at 5:21-23. However, Judge Hargrove's written opinion in *In re the Canyon Partnership* reveals that the scant evidence provided in support of the Motion falls short of meeting this standard. In *In re the Canyon Partnership*, Judge Hargrove "[found] that the proposed sales price [was] fair and reasonable and that the sale [was] in the best interest of the estate and the creditors" after "<u>evidentiary hearings</u> on the Application," where the movant Trustee, a

"licensed attorney, C.P.A. and real estate broker and experienced Trustee" provided the Court with testimony on an array of facts supporting the sale of the real property asset, including testimony as to numerous facts relating to the "'liquidation value,'" "marketing efforts" and "marketing difficulties associated with the Debtor's real property," among other things. *Id.* at 522, 524-526 (emphasis added).

There is no basis to conduct an evidentiary hearing on the present Motion as the Debtor has presented no evidence to establish critical issues such as, what is the value of the assets proposed to be sold; how was that value determined;[1] what efforts (if any) were undertaken to market the assets; if there were no efforts made to market the assets, why were no such efforts undertaken; why did the Debtor propose to sell the assets without an auction sale which would provide notice to possible interested parties; and what is the value to the Estate of Insiders Anderson and Kubicek's offer. The Debtor is required under Local Rule 9013-1(I) to support its Motion with competent evidence and it has failed to do so.

Instead, HHG proposes a sale absent evidentiary support. Indeed, HHG does not provide any evidence like the evidence relied upon by the court in *In re the Canyon Partnership*. There have been no evidentiary hearings on this Motion and HHG has not proposed any. Moreover, the Motion is devoid of any evidence as to liquidation value or marketing efforts. There is no reason to believe that marketing difficulties are to be expected in connection of the sale of this asset, which the Debtors have described as "highly coveted." *See* that certain Emergency Motion for an Order Authorizing the Use of Cash Collateral, dated September 2, 2009, at 3:22-24 (Docket No. 17). Indeed, HHG claims that "there is significant interest in the entertainment field in developing works of Philip K. Dick," such as this one. Motion at 6:1-4. Moreover, the movant here, a debtor company, does not inspire the same confidence that a movant like the Trustee in *In re the*

---

[1] In its schedules, the Debtor apparently listed these same assets as being valued, at cost, at $361,496. *See* contemporaneously filed Request to Take Judicial Notice.

2

*Canyon Partnership* inspires, especially given that the movant proposes a sale to its own insiders.

### 1. The Sale Price Is Neither Fair Nor Reasonable Because Net Profits Are Worthless

Beyond the fact that the Debtor has failed to produce any evidence on the fairness or the reasonableness of the sale price, it is well-known that net profits are worthless. The Debtor's proposal to sell a substantial asset of the Estate for net profits is essentially a proposal to give away these assets to its Insiders. Thus, the Debtor's proposed sale price is patently unfair and unreasonable.

"The 'net profit' is a defined contractual term which differs substantially from generally accepted definitions of profit." Victor P. Goldberg, *The Net Profits Puzzle*, 97 Colum. L. Rev. 524, 527 (March, 1997), attached hereto as Exhibit 1. "[T]he basic net profits formula subtracts from the studio's (distributor's) adjusted gross receipts the production costs, distribution expenses, and distribution fees." *Id.* at 528. "A film could, therefore, be profitable for the studio even though the calculated net profits turn out to be a large negative number." *Id.* at 527.

It is widely recognized that "net profits' are virtually worthless." Josh Getlin, *Author's creation, Disney's jackpot*, Los Angeles Times, February 13, 2008, http://articles.latimes.com/print/2008/feb/12/entertainment/et-cheetah13, attached hereto as Exhibit 2 (article about author of the hugely popular Cheetah Girls novels, the basis of three television movies and CDs and DVDs that have sold in the millions, not receiving a penny in profits where she was promised 4% of net from all exploitation). According to Paul Aiken, the executive director of the Authors Guild, "'You can't count on net profit deals for anything.'" *Id.* "Contracts contain definitions of 'net profits' that make it all but impossible for an author to collect money that once seemed tantilizingly at hand." *Id.*
///

At least one court, in *Buchwald v. Paramount Pictures, Corp.*, ruled that net profit agreements like the one proposed by HHG are unconscionable. *See* Exhibit 1 at 533

(discussing *Buchwald v. Paramount Pictures, Corp. (Buchwald II)*, No. C 706083, at 24-26). In the *Buchwald* litigation, the actor Eddie Murphy called net profit points "monkey points," because it would be "[s]tupid to take the points" – there "[w]on't be any profits." Jordan H. Leibman, *Fatal Subtraction: The Inside Story of Buchwald v. Paramount,* American Business Law Journal, AllBusiness.com, November 1, 1993, http://www.allbusiness.com/legal/415182-1.html (citations omitted). *See* Exhibit 1 at 531 for a detailed explanation of why there were no net profits in the *Buchwald v. Paramount* case.

There is a similar case involving the Spider-Man movie, where the "movie has taken more than $800m . . . at worldwide box offices and millions more from video and DVD sales" but the creator who "had an agreement with the publisher to get 10% of their profits" "has not seen a penny." *Lawsuit filed by Spider-Man creator*, BBC News, November 13, 2002, http://news.bbc.co.uk/2/hi/entertainment/2458083.stm, attached hereto as Exhibit 3. "Marvel has reported millions of dollars in earnings from the Spider-Man film - but no profits as defined by their contract." *Id.* (citations omitted). The same phenomenon occurred in connection with the film, Forrest Gump. *See* Bernard Weinraub, *'Gump,' a Huge Hit, Still Isn't Raking In Huge Profits? Hmm.*, New York Times, May 25, 1995, http://www.nytimes.com/1995/05/25/movies/gump-a-huge-hit-still-isn-t-raking-in-huge-profits-hmm.html, attached hereto as Exhibit 4 (article addressing the question, "How can a huge hit like 'Forrest Gump,' the third-highest-grossing movie of all time, not yet show a profit?" According to the author, "The answer is . . . Hollywood bookkeeping.").

This phenomenon has been the focus of much attention in the creative world. For example, author Mario Puzo included dialogue on the topic in his novel, *The Last Don*: "'Molly, I've never understood how I can have ten percent of the profit of a picture that grosses on hundred million dollars and costs only fifteen million to make, and then never see a penny. That's one mystery I'd like to solve before I die.'" Exhibit 1 at 524, *quoting* The Last Don at 318 (1996).

4

Indeed, "the common perception has been that 'net profits' are illusory; Hollywood accounting will assure that films will fail to show a profit and net profits participants will go away empty handed. . . . industry insiders suggest that of the approximately 130 major studio movies made each year, [citation omitted] fewer than twenty will pay off for the net profits participants." *Id.* at 525.

In light of this statistic and the foregoing wisdom, there is absolutely no reason to believe that the Estate will see any net profits from a *Flow My Tears* film. The Debtor certainly has not provided any evidence indicating as much. Indeed, the Debtor has not provided a scintilla of evidence on the issue of fair and valuable consideration.

### 2. The Sale Is Not in the Best Interest of the Estate

The Court must make a finding that the proposed sale by the Debtor to its Insiders is in the Best Interests of the Estate. The Debtor having failed to adduce any evidence on this issue has provided no basis for any such finding.

### B. The Sale Cannot Be Approved Because There Are Insufficient Facts to Support An Explicit Finding of Good Faith

Section 363(m) of the Bankruptcy Code requires bankruptcy courts to "make an explicit finding of 'good faith'" as to the behavior of the purchaser. *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147-148 (3d Cir. 1986) ("In short, we hold that when a bankruptcy court authorizes the sale of assets pursuant to *section 363(b)(1)*, it is required to make a finding with respect to the 'good faith' of the purchaser."). An implicit finding of good faith is insufficient. *Id.* at 148.

"Courts have generally appeared willing to set aside confirmed sales that were 'tinged with fraud, error or similar defects which would in equity affect the validity of any private transaction." *Taylor v. Lake (In re Cada Invs.)*, 664 F.2d 1158, 1162 (9th Cir. 1981).

///

Judge Riddle of this Court was faced with a similar situation as the present case in determining the propriety of an application to sell all of the assets of a debtor to its

5

insider. *In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830 (Bankr. C.D. Cal. 1991). Judge Riddle concluded:

> It is not bad faith *per se* for an insider to purchase property from an estate, even where the insider has a fiduciary duty to the estate
>
> . . . .
>
> Clearly then, a debtor who proposes a sale of all of its assets to an insider must fully disclose to the court and creditors the relationship between the buyer and seller, as well as the circumstances under which the negotiations have taken place, any marketing efforts, and the factual basis upon which the debtor determined the price was reasonable.

*Id.* at page 842. *See also In re 240 North Brand Partners Ltd.,* 200 B. R. 653, 660 (9th Cir. BAP 1996) (citing *In re Wilde Horse Enterprises).*

While *In re Wilde Horse Enterprises* involved the sale of all of the assets of that Chapter 11 debtor, there is no fundamental reason why the rule should be otherwise when there is any sale of significant assets to Insiders. Such sales, as a matter of course, should be held to a higher standard because, by definition, they are not arms-length transactions.

In the present case, the Debtor admits in its Motion that the assets to be sold to the Insiders have value. Motion at 12:2. There is no evidence in the Motion that the Debtor has made any attempt to sell these assets. Rather, the Debtor turns that requirement on

///
///

6

its head by simply stating that "HHG has not been contacted by any other potential buyer. . . ." Motion at 13:1.[2]

If the proposed disposition of these assets had been made in the context of Plan, the Court would be compelled to deny it as for at least 97 years it has been the rule that equity cannot receive anything without payment in full to the Debtor's creditors. *Northern Pacific Railway Company v. Boyd,* 228 U.S. 482, 508 33 S.Ct. 554, 561 (1913). The Debtor provides no justification as to why the time-honored "absolute priority" rule should be ignored in the present case.

**C.    There is No Reason to Rush a Sale, Given that the Option Does Not Expire for Over One Year**

There should be a process to determine the market value of the asset, such as an auction. *See*, *e.g.*, *In re the Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985) (sale approved by auction, *after* finding that sale was "in the best interests of the estate and the price is fair and reasonable"); *see also In re Abbots Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149 (3d Cir. 1986) (citations omitted) ("Generally speaking, an auction may be sufficient to establish that one has paid 'value' for assets of a bankrupt."). As set forth in the Motion, "The Flow My Tears Option will expired on August 5, 2011, unless extended or exercised prior to such date." Motion at 3:9-11. Given that the Option will not expire for more than a year – over 13 months – there is no reason to sell this asset on a lightning schedule, without any process for determining market value in place.

///

///

---

[2] The proposed sale to the Insiders who are the sole equity holders in HHG contravenes the established notion that "'The debtor or its equity holders are the last category of persons or entities which the code is designed to benefit. [citations omitted]'" *In re the Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985), *citing In re Alison Corp.*, 9 B.R. 827, 829 (Bankr. S.D. Cal. 1981).

7

**D.  HHG Should Not Be Permitted to Grant Derek Anderson and Victor Kubicek the Right to Use the Trade Name Without Compensation to the Estate**

HHG should not be permitted to grant Insiders Anderson and Kubicek "the irrevocable, perpetual, non-exclusive license and right to use the trade name 'Halcyon' and/or derivations thereof (the 'Trade Name') in connection with their future business endeavors" without compensation to the Estate. *See* Motion at 5 at subsection (d), *citing* the Turnaround Agreement. "As the court in *In re Alison Corp.* stated, one basic purpose of the Bankruptcy Code was to give the debtor a 'fresh start'." (*In re the Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985)); however, the Debtor proposes a gift of the trade name to Anderson and Kubicek so that they can proceed with "business as usual" – a purpose that is beyond the scope of the Bankruptcy Code. If Insiders Anderson and Kubicek want to exploit an asset of the Estate, they should be made to pay value to the creditors of this Estate.

## II.

## CONCLUSION

For the reasons set forth above, Guinn respectfully requests that the Court deny the Motion of Debtor Halcyon Holding Group, LLC Approving (1) Sale of Option Rights Free and Clear of All Liens, Claims and Encumbrances, and (2) Perpetual, Royalty Free License to Use the Name "Halcyon."

DATED: July 6, 2010

Respectfully submitted,

LAW OFFICES OF SANDOR T. BOXER

By _____
Sandor T. Boxer, Esq.
Co-Counsel for SUSAN L. GUINN

# DECLARATION OF SANDOR T. BOXER

I, Sandor T. Boxer, declare as follows:

1. I am co-counsel for Secured Creditor Susan L. Guinn. I submit this declaration in support of the Objection of Secured Creditor Susan L. Guinn to Motion of Debtor Halcyon Holding Group, LLC for Order Authorizing and Approving (1) Sale of Option Rights Free and Clear of All Liens, Claims and Encumbrances, and (2) Perpetual, Royalty Free License to Use the Name "Halcyon." I have personal knowledge of the facts stated herein and if called upon to do so, I could and would competently testify thereto in a court of law.

2. Attached hereto as Exhibit 1 is a true and correct copy of Victor P. Goldberg, *The Net Profits Puzzle*, 97 Colum. L. Rev. 524, 527 (March, 1997).

3. Attached hereto as Exhibit 2 is a true and correct copy of Josh Getlin, *Author's creation, Disney's jackpot*, Los Angeles Times, February 13, 2008, http://articles.latimes.com/print/2008/feb/12/entertainment/et-cheetah13. http://www.allbusiness.com/legal/415182-1.html.

4. Attached hereto as Exhibit 3 is a true and correct copy of *Lawsuit filed by Spider-Man creator*, BBC News, November 13, 2002, http://news.bbc.co.uk/2/hi/entertainment/2458083.stm.

6. Attached hereto as Exhibit 4 is a true and correct copy of Bernard Weinraub, *'Gump,' a Huge Hit, Still Isn't Raking In Huge Profits? Hmm.*, New York Times, May 25, 1995, http://www.nytimes.com/1995/05/25/movies/gump-a-huge-hit-still-isn-t-raking-in-huge-profits-hmm.html.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on July 6, 2010 at Los Angeles, California.

_____
Sandor T. Boxer

9